# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DISTRICT

THE HONORABLE REVEREND : 
KENNETH L. SIMON : CASE NO. 4:22-cv-612
1507 HILLMAN AVENUE :
YOUNGSTOWN, OHIO 44507 : RELATED CASE NOS. 2:21-CV-2267
: AND 4:88-CV-1104
 AND :
:
THE HONORABLE REVEREND :
LEWIS W. MACKLIN, II : JUDGE _____
505 PARKCLIFFE AVENUE :
YOUNGSTOWN, OHIO 44571 : "THREE-JUDGE PANEL
: REQUESTED"
AND :
: "CLASS-ACTION ALLEGATIONS"
HELEN YOUNGBLOOD :
749 COITSVILLE ROAD : "CLAIM OF
YOUNGSTOWN, OHIO 44405 : UNCONSTITUTIONALITY"
INDIVIDUALLY AND AS :
SUCCESSOR REPRESENTATIVES :
OF THE CLASS OF AFRICAN :
AMERICAN VOTERS CERTIFIED IN :
EZELL ARMOUR, ET AL. V. THE :
STATE OF OHIO, ET AL, N.D. OHIO :
CASE NO. 775 F. SUPP 1044 (N.D. :
OHIO, 1991) :
:
    PLAINTIFFS :
:
:
VS. :
:
GOVERNOR MIKE DEWINE, :
GOVERNOR AND MEMBER OF THE :
OHIO REDISTRICTING :
COMMISSION :
RIFFE CTR. 30TH FLOOR :
77 SOUTH HIGH ST. :
COLUMBUS, OH 43215 :
:
AND :
:
SECRETARY OF STATE FRANK :
LAROSE, AS SECRETARY OF :
STATE AND MEMBER OF :

THE OHIO REDISTRICTING                    :
COMMISSION                                :
22 NORTH FOURTH ST. 16TH                  :
FLOOR                                     :
COLUMBUS, OH 43215                        :
                                          :
AND                                       :
                                          :
HOUSE SPEAKER ROBERT R. CUPP,             :
SPEAKER OF THE OHIO HOUSE OF              :
REPRESENTATIVES AND CO-                   :
CHAIR OF THE OHIO                         :
REDISTRICTING COMMISSION                  :
77 SOUTH HIGH ST. 14TH FLOOR              :
COLUMBUS, OH 43215                        :
                                          :
AND                                       :
                                          :
SENATE PRESIDENT MATT                     :
HUFFMAN                                   :
PRESIDENT OF THE OHIO SENATE              :
AND MEMBER OF THE OHIO                    :
REDISTRICTING COMMISSION                  :
1 CAPITOL SQ. 2ND FLOOR                   :
COLUMBUS, OH 43215                        :
                                          :
AND                                       :
                                          :
AUDITOR KEITH FABER,                      :
MEMBER OF THE OHIO                        :
REDISTRICTING COMMISSION                  :
88 EAST BROAD STREET, 5TH            :
FLOOR                                     :
COLUMBUS, OHIO 43215                      :
                                          :
                                          :
              DEFENDANTS.                 :

**COMPLAINT**

## I.      INTRODUCTION

1. On August 23, 2021, the Ohio Redistricting Commission (hereinafter "Commission") began a series of regional hearings to accept testimony from Ohio citizens in relation to the reconfiguration of Ohio's Congressional districts, based upon the 2020 census results,  under procedures set forth in comprehensive amendments to the Ohio Constitution approved by Ohio voters in 2015.  See, Ohio Constitution, Article XI.

2. On the very first day of hearings, Plaintiff, the Honorable Reverend Kennth L. Simon made the following statement to the Commission

> Co-Chair, Senator Vernon Sykes [01:32:14] Questions? Seeing none, thank you very much, Reverend Kenneth Simon.
>
> Simon [_____] Chairman Sykes, and to the legislators and to this wonderful audience, my apologies, I did not intend to speak today, but I was moved by the young man who spoke so passionately. Urn, I'm chairman of the Community Mobilization Coalition for the Greater Youngstown Area, a group of 18 minority organizations organized for the express purpose of voter registration, voter education and voter mobilization. We've been in existence for twenty-two years and affecting the political, hopefully, climate here in the city of Youngstown. I've been through this process before, along with many of us in this room, where we appear before our legislators. I've been down to Columbus appearing before a Senate education committee and giving testimony, and others have traveled distances to go down and testify. They're concerned people in this room who've taken time out of their schedules to come here and give their passionate testimony. And the passion that the young man displayed hits at the heart of all of our pain is that the sad reality is that we're going to have these sessions and we're going to listen to all of this testimony. And we're going to go behind closed doors and do what we've been doing, voting along party lines. And that's the sad reality and that's the pain that that young man was trying to convey. We spend all of this time in a formality and then we go back behind closed doors and we, we're not going to do the right thing, we're going to do what we've been doing, voting along party lines because, and it's not because we don't care, it's because we care about the wrong thing. [applause] We don't care about the people. I hope that you all would prove us prove me wrong. I hope that you would prove me wrong. But the sad reality is that's how it has been. I have been through hearings and hearings and hearings and testifying, and we just keep doing the same thing because we

3

> don't hear the people. We're loyal to our parties. And that has got to stop in
> The State of Ohio. Please prove me wrong. Thank you. [applause]

See, Transcript August 23, 2021, Redistricting Hearing, Youngstown State University. Ex.
A.

3.   Unfortunately, over eight months have passed since Reverend Simon's sincere and
prescient remarks. As feared by Reverend Simon, the Defendants have approved, along
party lines, two racially discriminatory and partisan Congressional redistricting plans.  On
November 20, 2021, Defendant DeWine signed SB 258 into law, enacting a plan setting
forth the map of congressional districts in Ohio for the next four years (the First Plan).  The
First See Exhibit  Plan, proposed by Republicans, was passed along strict party lines, with
nearly all Republicans, but no Democrat, voting in favor of the bill enacting the First Plan.
The Plan was passed pursuant to an express policy of non consideration of any racial
demographic information.

4.   On January 14, 2022, the Ohio Supreme Court invalidated the First Plan under
Article XIX of the Ohio Constitution. The Court found that the First Plan violated Section
1(C)(3)(a) of that Article, by unduly favoring the Republican Party. See Adams v. DeWine,
Slip Opinion No. 2022-Ohio-89, ¶ 102. It further held that the First  Plan violated Section
1(C)(3)(b) by unduly splitting governmental units. Id. The General Assembly and/or the
Ohio Redistricting Commission (the "Commission") were then directed to adopt a new
plan that remedied these defects. Id. ¶¶ 99, 102.

5.   A new congressional district plan (the "March 2 Plan") was enacted by the
Commission on March 2, 2022. Exhibit B.  The March 2 Plan violates the Federal Voting
Rights Act and the Fourteenth and Fifteenth Amendment, because it was also developed
without consideration of racial demographic information.

6.  Plaintiffs in this action, Reverend Simon, Reverend Macklin and Ms. Youngblood (hereinafter "the Simon Parties") challenge Defendants' policy of non consideration of racial demographics in connection with developing the March 2, 2022 Congressional Plan, as well as the Plan itself. In other words, Plaintiffs seek in this action  to invalidate the March 2 Plan and enjoin certification of the results of any election utilizing this Plan  for election of representatives  for the proposed 6th Congressional District because the process utilized by Defendants to develop their Plans violates the Voting Rights Act and ignores the historical findings of official racial discrimination in <u>Ezell Armour, et al. v. The State of Ohio</u>, Case No. 775 F. Supp 144 (N.D. Ohio 1991).  Intentionally disregarding the mandate of the Voting Rights Act of 1965, as amended,  concerning racial demographics and Defendants' overt adoption of an explicit process policy to disregard racial demographics in connection with district configuration renders the March 2 Plan invalid.

7.  Plaintiffs filed this action to respectfully request a federal court explain to Defendants that the Voting Rights Act of 1965, as amended, is still the law of the land. Instruction from this Court is required now more than ever.  Aside from the dilution of voting strength caused by Defendants' racially gerrymandered districts, the enactment of voter suppression legislation  by State legislative bodies is currently rampant throughout the United States including in Ohio. See, Current  *"Ohio House Bills 294 and 387"*. Also see, *State Voting Bills Tracker,  2021. Brennan Center for Justice."*

8.  The State is not entitled to multiple opportunities to remedy its unconstitutional Congressional districts.  See, <u>Reynolds v. Sims</u>, 377 U.S. 533, 585-87 (1964).

9.  Due to Defendants' repeated and  intentional disregard of current federal law, the Ohio Constitution and the findings in <u>Armour v. Ohio</u>, concerning Ohio's history of intentional racial discrimination in redistricting, exceptional circumstances exist that

warrant the immediate appointment by this Honorable Court of a Special Master under Fed. R. Civ. P. 53 to implement a legislative redistricting process that complies with the requirements of ¶2 and 3 of the VRA, the Ohio Constitution, and the findings in the <u>Armour</u> Opinion.

10. In the interim, Plaintiffs seek through this action to enjoin issuance of certificates of nomination or election for representative based on an Ohio Congressional district map that does not combine the cities of Youngstown and Warren, Ohio and the Eastern suburbs of Cleveland into a single district, or includes any county south of Mahoning County into the same Congressional district as Youngstown.

## II. BACKGROUND

11. Plaintiffs, the Honorable Reverend Kenneth L. Simon, the Honorable Lewis W. Macklin, II and Helen Youngblood, in their individual capacities as registered Black voters in Mahoning County, Ohio and as successor representatives of the class of Black voters certified in <u>Ezell Armour v. State of Ohio</u>, 775 F. Supp 1044 (6th Cir. 1991) allege as follows:

12. Plaintiffs bring this action under 28 U.S.C. §§ 1331, 1343, 1357 and Federal Rule of Civ. P. 53, 57 and 65 for the reason the matters in controversy arise under the Constitution and laws of the United States, and exceptional circumstances exist. Plaintiffs also bring this action under Sections 2 and 3 of the Voting Rights Act of 1965, 52 U.S.C. §10301(b). Separate and apart from the preceding jurisdictional bases, Plaintiffs also bring this action to enforce the historical findings previously made by this Court in <u>Amour v. Ohio</u>, supra, that warrant Ohio being classified under §3 of the VRA as a "bail-in" jurisdiction.

13. Section 2 of the Voting Rights Act, (hereinafter "VRA") prohibits enforcement of any voting qualification, prerequisite to voting, standard, practice, or procedure that results in the denial or abridgement of the right to vote on account of race, color, or language minority status.

14. Plaintiffs currently reside in what has been proposed by Defendants as the 6th U.S. Congressional District. Based upon the testimony of the architects of the proposed districts, Mr. Ray DiRossi and Ohio Republican Legislative leaders, the methodology employed to configure  Ohio Congressional district's  encompassing Mahoning and Trumbull Counties in particular, and throughout Ohio generally, violates the VRA because the proposed districts result in Plaintiffs having less opportunity than other members of the electorate to participate in the political process and to elect representatives of choice.

15. The Voting Rights Act and Constitutional violations complained of herein, were intentional.  Defendants were fully aware of their duties under the VRA and 15th Amendment, but opted  to intentionally violate these duties,  the previous findings of racial discrimination in Armour,  and the clear language of Section 2 and 3 of the VRA in favor of partisan advantage.  Defendants' racial discrimination and failure to follow federal law, specifically harmed Plaintiffs' class in Mahoning and Trumbull County, but also diluted Black voting power across Ohio.

16. The conduct of Defendants' described  herein should operate to invalidate the March 2 Plan because, despite having been advised of the historical  findings of this Court in Armour concerning racial discrimination in districting , the duty under the VRA to engage in an intensely local appraisal of indigenous political reality in Ohio and Mahoning Valley, and the totality of circumstances test set forth in the Senate Report enacting Section 2, Defendants gave specific instructions to their staff responsible  for the drawing of district

maps, to disregard race, racial bloc voting or any other racial consideration  in connection

with district configuration. This is directly contrary to the mandate of the VRA.

17. Support for this assertion is found in the following exchange that occurred  during

hearings before the Ohio Redistricting Commission on September 9, 2021.

> Ray DiRossi:  Urn, [00:03:30] I am Ray DiRossi and as was mentioned, I'm from the caucus staff for the Senate Majority Caucus and my colleague Blake Springhetti, caucus staff for the Ohio House Majority Caucus. Urn, co-chairs and distinguished members of the Redistricting Commission, it's great to be with you today.
>
> Sykes:          Uh, thank you to the co-chairs and to Mr. Springhetti and Mr. DiRossi. Thank you, uh, for the work that you put together, uh, put, so you could present to us to get, today. Excuse me. Uh, my question is specific to, urn, how this current map complies with, uh, any provisions of the Voting Rights Act and what provisions of the Voting Rights Act [00:22:30] d- did you consider in constructing this map that you presented, or these maps that you presented today?
>
> Ray DiRossi:  Co-chairs, Leader Sykes, thank you for the question. We did not use demographic data or racial data in the production of our maps.
> Sykes: Any follow up.
>
> Vernon Sykes:  Yes, please.
>
> Sykes:          Thank you for answering the question. Uh, so are there any provisions of the Voting Rights Act in which you considered while you drew the, or while you drew these maps [00:23:00] before us today?
>
> Ray DiRossi: I guess I would ... Co-chairs I guess I would say it on my previous statement, we did not use racial data or demographic data for the map, but we feel that the map complies with all the provisions of the Ohio Constitution.
>
> Sykes: Thank you. Uh, I appreciate your answer, and I, I certainly appreciate the brevity of it. Uh, can you explain why you didn't consider any parts of the Voting Rights Act in your consideration of these maps [00:23:30] before us today?
>
> Ray DiRossi:  Well, I said we didn't consider racial data or demographic data in our maps, but we were directed not to use that data by the legislative leaders, and so we did not use it.
>
> Audience:          (laughs)

8

Vernon Sykes: Yeah. [inaudible 00:23:46].

Sykes: So I, I would count myself as a legislative leader and I don't think that I shared that information with you and I, this is not an ambush, this is simply a question. The Voting Rights Act is certainly, uh, a part of our, uh, [00:24:00] election and electoral fabric. Uh, and so really just trying to get a better idea of how we are, or not in compliance with that, with these maps. So, urn, hopefully we can have some deeper conversations about that, but, but again, thank you for your responses.

Ray DiRossi: Thank you.

See, Exhibit C, DiRossi Testimony, pp. 789-790.

This testimony is clear evidence that the legislative leadership in Ohio, intentionally disregarded whether proposed districts would dilute Black voting strength or the existence among other things, of racial block voting or any of the other Senate Report factors.

18. According to Mr. DiRossi, the lead representative for Defendants in the redistricting process, the State not only intentionally decided to ignore race and the Voting Rights Act, but also previous judicial findings of official racial discrimination in legislative redistricting in Ohio set forth in Armour Accordingly, Plaintiffs are entitled to react under §§2 and 3 of the VRA.

### III.    JURISDICTION

19. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

20. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the property that is the basis of this action is located in this district.

22. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rule 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201-2202.

23. All conditions precedent to the maintenance of this case and Plaintiffs' claims have occurred been, performed, or otherwise been waived.

24. The Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States, and specifically, laws and Constitutional provisions protecting the right to vote. Plaintiffs bring this action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution of the United States and federal law. Plaintiffs bring this action to secure equitable relief under federal law providing for the protection of voting rights, pursuant to 28 U.S.C. §§ 2201 and 2202.

25. This Court has personal jurisdiction over Defendants, who are sued only in their official capacities as officers of the State of Ohio or its political subdivisions.

26. This Court has the authority to enter a declaratory judgment and to provide preliminary injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## IV. PARTIES

27. Plaintiffs, the Honorable Reverend Kenneth L. Simon The Honorable Lewis W. Macklin II and Helen Youngblood are Black registered voters who reside in Mahoning County, Ohio. Plaintiffs Simon , Macklin  and Youngblood are members of the class of African American voters certified in the case of Ezell Armor, et al. v. The State of Ohio,

Case No. 775 F. Supp. 1044 (N.D. Ohio 1991). Plaintiffs are the successor Armour class representatives.  Plaintiff Simon is the senior pastor of New Bethel Baptist Church.  Rev. Kenneth L. Simon was born and raised in Youngstown, Ohio. He accepted Christ at the age of eight and was baptized in the New Bethel Baptist Church. He was called to the ministry in 1990 and was ordained in 1993. He served as Assistant Pastor and Director of Christian Education. In 1995 he was elected and called to the pastorate of the church where he currently serves after succeeding his father who was pastor for 33 years. He is a graduate of East High School and received his Bachelor of Science Degree in Business Administration from Youngstown State University. He received his Biblical and Religious Training from the Evangelical Training Association, Wheaton, Illinois and the Christian Study Center, in Youngstown, Ohio.  Rev. Simon is currently serving as the Chairman of the Community Mobilization Coalition, Immediate Past Moderator of the Northern Ohio Baptist District Association, Worship Leader for the Lott Carey Foreign Mission Convention, Worship Leader for Ohio Baptist General Convention Congress of Christian Education, Chairman of the Next Steps Coalition on Police Reform, a member of the Youngstown Warren Black Caucus, Co-Convener of the Youngstown/Warren Dr. Martin Luther King Planning Commission, School Board member of Southside Academy, a member and former President of the Interdenominational Ministerial Alliance, Treasurer for the Baptist Pastors' Council, Board Member of MYCAP (Mahoning Youngstown Community Action Partnership), Board Member of the Greater Youngstown Crime Stoppers, and serves as Facilitator of the Community Leadership Coalition on Education. He has served as Vice-President of the 100 Black Men Organization (Youngstown/Warren Chapter), President of the Board of Directors for the Mahoning Valley Association of Churches, former Chairman and board member of the Mayor's Human Relations

Commission, a board member for the Western Reserve Port Authority, a past member of the Academic Distress Commission for the Youngstown City School District and is a graduate of Leadership Mahoning Valley Class of 2002.

28. Plaintiff Helen Youngblood is a respected community activist. She is the former President of Local 2001 Council of 8 of the American Federation of State County and Municipal Employees ("AFSCME"). Ms. Youngblood is the chairperson of the Mahoning Valley 1619 Project and has served in a variety of leadership roles in the Mahoning County, area. She was the Plaintiff in <u>Helen Youngblood v. Boad of Mahoning County Commissioner</u>, Case no. 4:19-cv-0331, N.D. Ohio, an action challenging the responsiveness and hiring practices of the Mahoning County, Ohio Commissioners.

29.  Rev.  Macklin serves as the lead pastor of Holy Trinity Missionary Baptist Church. He was appointed to serve as a member of the Youngstown City School Board of Education. A returning member to the Children Services Board, he is former chairman of its board. He is the President Pro Tem of the Youngstown City Health District and past National Vice President of the One Church One Child, Inc. and local chairman of the Mahoning County's "One Church One Child" initiative to encourage foster and adoption. He is the past president of the Interdenominational Ministerial Alliance and the current president of the Baptist Pastors' Council, during which the endowed the Rev. Martin Luther & Mrs. Coretta Scott King Testament of Hope Scholarship Fund at YSU was established. He is the past president of the ACTION and Associated Neighborhood Centers.

He is the co-convener emeritus of the Rev. Martin Luther King Planning Committee and current chairman the annual African American Male Wellness Walk of the Mahoning Valley. Passionate about education, he serves on the boards of education for the Academy of Urban Scholars, Cardinal Mooney High School, Mahoning County High School,

Southside Academy and committees for the Youngstown City School District. In 2014 he was inducted into the Woodrow Wilson High School Hall of Fame. He was bestowed the Leadership Mahoning Valley Civic Leadership Award for community service. He has been recognized for community leadership with the Rev. Lonnie K.A. Simon Award by New Bethel Baptist Church and the YSU Office of Diversity for championing issues of diversity & inclusion. He has also been inducted into the prestigious Phi Kappa Phi Honor Society YSU Chapter.

He has been cited by the Vindicator as one of the "Persons Who Made a Difference," for supporting initiatives in the valley. He co-chaired, with now YSU President Jim Tressel, the three million dollar capital campaign for the renovated Rayen Football Stadium. He has served as a chaplain & life coach for the YSU Football Team and is the chairman of the Youngstown Police Department's Chaplaincy.

30. Defendants include each Ohio elected official who voted for approving, implementing and remedying Ohio's Congressional and General Assembly redistricting plans, such that all necessary parties are before the Court.

31. Mike DeWine is the Governor of Ohio and a member of the Commission and is sued in his personal and official capacity. Governor DeWine approved the invalid Congressional Plan and rejected General Assembly plans.

32. Frank LaRose is the Ohio Secretary of State and a member of the Commission and is sued in his personal and official capacity. He is the chief election officer in Ohio responsible for overseeing election administration pursuant to Ohio Rev. Code Ann §3501.04. Mr. LaRose approved the Senate Plan. Defendant Larose approved the acts challenged in this action.

33. Bob Cupp is the Speaker of the Ohio House of Representatives and a member of the Commission and is sued in his personal and official capacity. The General Assembly has primary authority for drawing Ohio's congressional districts. Defendants Cupp approved the acts challenged in this action.

34. Matt Huffman is the President of the Ohio State Senate and a member of the Commission and is sued in his personal and official capacity. Mr. Huffman approved the Congressional and General Assembly plans challenged in this action.

35. The Commission and its five members Co-Chair House Speaker Bob Cupp, Governor Mike DeWine, Secretary of State Frankl LaRose, Auditor Keith Faber, Senate President Matt Huffman, are each sued in their personal and official capacities.  Defendants are sued in their personal capacity because their acts of racial discrimination were intentional.

36. Plaintiffs have not sued the members of the Redistricting Commission who endeavored to comply with the command of the 15th Amendment and VRA and voted against the challenged Congressional Plan.  Plaintiff only sues those State officials that ignored their duties under the 15th Amendment and VRA and  engaged in intentional racial discrimination in connection with the challenged redistricting.

37. Defendant Yost is sued for the reason Plaintiffs challenge the Constitutionality of any legislation enacted to approve any current or proposed redistricting plan

## V.      ALLEGATIONS

38. Plaintiffs reallege that which has been asserted above as though fully asserted herein.

39. The gravamen of this Complaint is the wholesale disregard by the Defendants of their duty in connection with drawing legislative districts to consider whether the boundaries adopted deprive Black voters of an equal opportunity to participate in the political process and to elect representatives of choice. Here Defendants violated both the 15th Amendment are VRA by adopting a specific policy to totally disregard the impact of racial bloc voting, and the Senate Report factors underlying the VRA, on their proposed districts.

40. The right to vote is a "precious" right, <u>Harper v. State Bd. of Elections</u>, 383 U.S. 663, 670 (1966), "of the most fundamental significance under our constitutional structure," <u>Burdick v. Takushi</u>, 504 U.S. 428, 433 (1992) (internal quotation marks omitted).

Section 2 of the Voting Rights Act provides, in relevant part:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b)

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(b).

41. Congress enacted the Voting Rights Act for the broad remedial purpose of ridding the country of racial discrimination in voting.

42.     Ohio and the  Mahoning Valley  have a documented history of imposing racially discriminatory voting  requirements. See, e.g., Ezell Armour, et al. v. The State of Ohio, et al., 775 F. Supp. 1044 (N.D. Ohio 1991) (Black voting age residents who challenged constitutionality of apportionment of the Ohio House of Representative were entitled to relief because the challenged boundary intentionally minimized or cancelled out the voting strength of minority vote).

43.     A Black candidate has never been elected  to a Mahoning and Trumbull County office.  The Defendants should have taken notice of this. The Armour Opinion and redistricting hearing testimony of Plaintiff Simon  concerning Mahoning Valley  history was brought  to Defendants' attention on the first day of Regional Hearings See Simon August 23,2021 Testimony Exhibit  A . Plaintiffs also submitted testimony and  a Proposed District map to Defendants at the September 14, 2021 , See Exhibit  D.

44.     In   Case No. 2:22-cv-773, Gonidakis v. Ohio Redistricting Commission, the Plaintiffs  requested that the Court adopt an Ohio General Assembly redistricting plan that the Simon  Plaintiffs had previously  challenged here in Case No 21-CV-2267.The Simon Plaintiffs intervened  in the Gonidakis action to object to adoption of the proposed General Assembly Plan and to protect their  status under the first-to-file rule which required Simon Plaintiffs' first and earlier  filed  challenge to Ohio's General Assembly map to go to judgment first.  See Raatz v. Columbia Gas Transmission Co 812 F.3d 785, (6th Cir. 2016). Case No 21-CV-2267  was dismissed due to the SD Ohio Court  granting  the Simon parties' motion to intervene in the Gonodakis action. However ,on  the April 12, 2022 the S.D. Ohio Court  ruled  the relief  sought by the Simon Parties in relation to the Congressional Plan exceeded the scope of the permitted intervention in Gonadakis. The

Court suggested the Simon Plaintiffs refile in the N.D. Ohio to seek relief from the proposed Congressional map. This action is a refiling of N.D. Ohio Case No. 21-cv-2267.

45.     As a result of the 2020 decennial census and resulting apportionment calculation Ohio will lose one Congressional district seat, requiring redistricting of Ohio's Congressional Districts prior to the 2022 midterm elections.

46.     The primary purpose of the census enumeration remains the apportionment of Congressional seats.

47.     Under the Current proposed Congressional Redistricting Plan the Congressional District encompassing Youngstown, Ohio in Mahoning County has been joined with areas south of Mahoning County stretching over 160 miles where racial bloc voting abounds.  The new district will result in illegal and unconstitutional dilution of the Mahoning Valley Black vote by impairing the ability of the Mahoning Valley Black voters to elect a United States Congressional representative of choice, due to the submersion of Black voting strength  into the counties of  Columbiana, Caroll, Jefferson, Harrison, Belmont and Washington instead of the more racially diverse adjacent  Stark, Summit or Cuyahoga Counties. Had the defendants considered racial block voting , this result would have been apparent based upon the 2020 Presidential election results alone. The proposed district stretches from Youngstown, Ohio to Marietta, Ohio a distance of 164 miles. The proposed district has a negligible Black population. The proposed district includes ten Ohio counties. Plaintiffs presented a proposed district to Defendants that included areas North and Northwest of Mahoning and Trumbull counties and would constitute a district with a black voting majority. See Exhibit D

17

48.     The Ohio Constitution prescribes a method for the drawing of Congressional Districts. *See id*., art. XIX, §1. The General Assembly has until "the last day of September of a year ending in the numeral one" to adopt a Congressional map. *Id*., §1(A) (*i.e.*, September 30, 2021). Before that date, it must secure "the affirmative vote of three-fifths of the members of each house of the general assembly, including the affirmative vote of at least one-half of the members of each of the two largest political parties represented in that house." *Id*. If the General Assembly fails to meet that September 2021 deadline, then the Ohio Redistricting Commission "shall adopt a Congressional District plan not later than the last day of October of that year." *Id*., §1(B). It can do so only with "the affirmative vote of four members of the commission, including at least two members of the commission" representing the "two largest political parties represented in the general assembly." *Id*. If the Commission is unable to reach an agreement, then the General Assembly may adopt a plan by the end of November. This time, the plan must win the "affirmative vote of three-fifths of the members of each house, including the affirmative vote of at least one-third of the members of" the two largest parties. *Id*., §1(C)(2). Finally, and as a fourth option if all other options fail, the Ohio General Assembly may adopt a plan by the vote of a simple majority of the members of each chamber that  lasts for four years. *Id.*, §1(C)(3).  The March 2 Plan is the product of this process.

49.     Republicans control both chambers of the Ohio General Assembly.

50.     The Black residents of Youngstown and Warren when combined with areas North and Northwest are are a sufficiently large, and geographically compact population

18

to constitute a determinative vote in a Congressional District, are politically cohesive, vote as a bloc, the White majority in the Defendant proposed district vote sufficiently as a  bloc to enable it to defeat the Blacks' preferred candidate.

51.    Under the totality of the circumstances, the March 2 Plan and results in the denial and abridgment of the right to vote on account of race or color in violation of Section 2 of the  Voting Rights Act.

52.    The March 2 Plan dilutes Black voting strength and deprives Plaintiffs of an equal opportunity to elect representations of their choice.

53.    Under the totality of the circumstances, including the history of the area detailed in the Armour Opinion, which Defendants failed to consider which detailed a history of discrimination in Youngstown in the employment practices, in the city's school system, sentencing and other fundamental areas, the March 2 of Ohio Congressional districts deprives Blacks  in Youngstown and Warren of the opportunity to elect a candidate of their choice in the proposed 6th Congressional District.

54.    The March 2 Plan also minimizes or cancels out the ability of Plaintiffs and other Black voters in the Mahoning Valley to elect their preferred candidates.

55.    Accordingly, Plaintiffs allege, under the totality of the  circumstances, the proposed redistricting of the 6th Congressional District impairs the ability of the Plaintiffs to  participate equally in the political process."

56.    The following is additional support:

a.  The history set forth in <u>Armour</u> of official discrimination in the Mahoning Valley that touched the right of Blacks to  register, vote, or otherwise to participate in the  democratic  process  should  have  been  considered  by Defendants;

b.  Voting in the Mahoning Valley and the counties in the newly proposed 6th District  is racially polarized;

c.  Blacks in the Mahoning Valley bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process, as evidenced by the record setting murder rate in Youngstown;

d.  Political campaigns have been characterized by overt and subtle racial appeals;

e.  No Black has been elected to county-wide elections for County Commissioner or Common Pleas Judges in Mahoning or Trumbull County.; and

f.  As outlined in the case of <u>Youngblood v. County Commissioner</u>, Sixth Circuit, Case  No.  19-3877,  elected  officials  in  Mahoning  County  have  been unresponsive to the particularized  needs of  the Black community in Mahoning County.

### THE NEED FOR SECTION 3(C) RELIEF

57.  Over time, the Ohio legislature and the Defendants have employed a variety of devices to restrict voters of color's access to the franchise, up to and including the recent enactment of the March 2 Plan and the violations cited in <u>Armour</u>.

20

58.     Plaintiffs are "aggrieved persons" within the meaning of Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c).

59.     In the absence of relief under Section 3(c) of the Voting Rights Act, 52 U.S.C. §10302(c), the Ohio legislature will continue to violate the Voting Rights Act and the voting guarantees of the Fourteenth Amendment in the future. Accordingly, Plaintiffs seek Section 3(c) relief also.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, *et seq*.
### Against All Defendants

60.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

61.     Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), provides in pertinent part:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . .

62.      In direct violation of Section 2 of the Voting Rights Act, the March 2 Plan. Submerges Youngstown and Warren Black voters into a Congressional District with extreme racially polarized voting.

63.     The electoral procedures discussed in the    Paragraphs above , violate Section 2 even in the absence of  discriminatory intent, because, by their discriminatory impact, they "result in a  denial or abridgement" of the right of Black voters to vote and to

participate equally in the democratic process. Unfortunately the evidence here shows the Defendants intentionally ignored the VRA and 15th Amendment duties which has resulted in this discriminatory outcome.

64.     A voting qualification, prerequisite, practice, or procedure violates  Section 2 "if, based on the totality of circumstances," election processes "are not  equally open to participation" by protected classes of citizens, in that they "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b).

65.     The March 2 Plan violates Section 2 of the Voting Rights Act because, given the "totality of circumstances," including the long history of racial discrimination in Ohio, the challenged provisions, individually and cumulatively, will disproportionately deny Black voters in the Mahoning Valley an equal opportunity to participate in the political process and to elect representatives of their choice.

66.     By reason of the foregoing Plaintiffs are entitled to an order declaring March 2 Plan unconstitutional.

## SECOND CLAIM FOR RELIEF
### Fourteenth Amendment
### U.S. Const. amend., XIV, § 2; 42 U.S.C. § 1983
### (Intentional Racial Discrimination)
### Against All Defendants

67.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

68.     Section 2 of the Fourteenth Amendment to the United States Constitution provides:

Section 2

Representatives shall be apportioned among the several States according to their respective numbers, <u>counting the whole number of persons in each State</u>, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number the male citizens twenty-one years of age in such State. (emphasis added)

69.     The March 2 Plan violates the Fourteenth Amendment's plain language that "[r]epresentatives <u>shall be apportioned among the several states according to their respective numbers, counting the whole number</u> of persons in each state," excluding only "Indians not taxed." U.S. Const., amend. XIV, § 2 (emphasis added). It also flies in the face of the statutory scheme governing apportionment, which requires the State to include "the <u>whole number</u> of persons in each State" in the apportionment base—again, excluding only "Indians not taxed." 2 U.S.C. § 2a(a) (emphasis added).

70.     42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the  deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

71.     The March 2 Plan violates Section 2 of the Fourteenth Amendment to the United States Constitution because the Plan abridges the rights of Black Ohioans to vote because the Plan was devised without consideration of the circumstances applicable to Black voters.

72.     Ohio's history of racial discrimination in the context of voting,  the known and reasonably foreseeable discriminatory impact of the March 2 Plan, the tenuous and pretextual nature of the stated justifications for this Plan raise a strong inference that it was proposed and enacted with a discriminatory purpose in violation of §2 of the Fourteenth Amendment. As a result of the intentional  violation of Section 2 of the 14th Amendment by defendants  the number of representatives  in Ohio should be reduced to the same extent that defendants caused Ohio Black voting power to be debased

.

**THIRD CLAIM FOR RELIEF**
**Fifteenth Amendment**
**U.S. Const. amend., XV; 42 U.S.C. § 1983**
**(Intentional Racial Discrimination in Voting)**
**Against All Defendants**

73.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

74.     42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute,  ordinance, regulation, custom, or usage… subjects, or causes to be subjected, any  citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and  laws…."

75.     Section 1 of the Fifteenth Amendment to the United State Constitution prohibits states from denying or abridging the right of American citizens to vote on  account of their race or color.

76.     The March 2 Plan and violates the Fifteenth Amendment to the United States Constitution because Defendants intentionally proposed, enacted and intend to

administer and enforce this plan and election procedures to deny and abridge the right to vote on account of race or color.

### FOURTH CLAIM FOR RELIEF
**First and Fourteenth Amendments**
**U.S. Const. amends. I, XIV; 42 U.S.C. § 1983**
**(Undue Burden on the Right to Vote)**
**Against All Defendants**

77.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

78.     The March 2 Plan violates both the First and Fourteenth Amendments.

79.     Due to the previous stay Plaintiffs did not file to the March 2, Plan. Sooner in this Court but objected timely in Gonadakis.

80.     Defendants have had adequate opportunity to formulate a lawful plan, but have instead adopted redistricting procedures that result in denial to  the Simon Parties of opportunity to elect representatives of choice.

81.      The State is not entitled to multiple opportunities to remedy unlawful districts. See, Reynolds v. Sims, 377 U.S. 533, 585-87.

82.     The intentional failures of Defendants to comply with the VRA and the Fourteenth and Fifteenth Amendments combined with the imminent risk of election chaos created by Defendants' malfeasance,  justify the immediate appointment of under Fed. R. Civ. P. 53 of the appointment of a special master to craft lawful districts

### PRAYER FOR RELIEF

Wherefore, Plaintiffs  respectfully request that this Court:

a. Declare that the Ohio Congressional Redistricting process rule disregarding race and the March 2 Plan, violative of Section 2 of the Voting Rights Act, 52 U.S.C. §10301;

b. Enjoin Defendants, their agents and successors in office, and all persons acting in concert with them from issuing certificates of nomination or election for any representative elected for the proposed 6th Congressional District  under the March 2 Plan;

c. Order Defendants to devise and adhere to  a redistricting process that invalidates so-called Redistricting Rule 9 and  that complies with Section 2 of the Voting Rights Act ,the 14th  and  15th Amendments;

d. Appoint a Special Master under Fed. R. Civ. P. 53;

e. Require the Special Master to craft Congressional districts through a process that complies with both the VRA and Ohio law;

f. Retain jurisdiction and subject Defendants to a preclearance requirement pursuant to Section 3(c) of the Voting Rights Act, 52 U.S.C. §10302(c); and

g. Grant such other and further relief as may be just and equitable including attorneys fees, and the proportionate reduction in  the number of the representatives  in Congress from Ohio to reflect the defendants' deliberate disregard of Black Ohio voters unless Defendants remedy their intentional dilution of Black voting strength.

Respectfully Submitted,


*s/Percy Squire, Esq.*
Percy Squire (0022010)
341 S. Third St., Suite 10
Columbus, Ohio 43215
(614) 224-6528 T
(614) 224 -6529 F
psquire@sp-lawfirm.com
Attorney for Plaintiffs