# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **KENNETH L. SIMON, et al.,** | : | |
| | : | |
| Plaintiffs**,** | : | Case No. 4:22-cv-612 |
| | : | |
| v. | : | **JUDGE JOHN ADAMS** |
| | : | |
| **GOVERNOR MIKE DeWINE, et al.,** | : | |
| | : | |
| Defendants. | : | |

---

## DEFENDANTS' JOINT COMBINED MOTION TO DISMISS AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PARTIAL SUMMARY JUDGMENT, AND IMMEDIATE APPOINTMENT OF A SPECIAL MASTER

---

Now come Defendants Governor Mike DeWine, Secretary of State Frank Larose, Auditor of State Keith Faber, House Speaker Robert Cupp, and Senate President Matt Huffman, and hereby move this Court to dismiss the Complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6). The reasons for this Motion are set forth in the attached Memorandum, which also serves as the Defendants' Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, Partial Summary Judgment, and Immediate Appointment of a Special Master.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*

JULIE M. PFEIFFER (0069762)
*Counsel of Record*
ALLISON D. DANIEL (0096186)
GARRETT M. ANDERSON (0100121)
Assistant Attorneys General

Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Allison.Daniel@OhioAGO.gov
Garrett.Anderson@OhioAGO.gov

*Counsel for Defendants Governor Mike DeWine, Secretary of State Frank Larose, Auditor of State Keith Faber, House Speaker Robert Cupp, and Senate President Matt Huffman*

# TABLE OF CONTENTS

Table of Authorities .......................................................................**Error! Bookmark not defined.**

Statement of the Issues................................................................................ 11

Summary of the Arguments ......................................................................... 11

Memorandum in Support .............................................................................. 12

I.     Introduction.................................................................................... 12

II.    Factual Background ....................................................................... 14

    A.    Congressional Redistricting Under Article XIX of the Ohio Constitution................................................................................. 14

    B.    The May 3 Primary Election Proceeded with the Second Congressional Plan passed by the Ohio Redistricting Commission on March 2, 2022. .................................................................... 15

    C.    The Plaintiffs Sat Out During Litigation over the Congressional Plan at the Ohio Supreme Court. .................................................... 17

    D.    Plaintiffs Want to Deny the *Winning* Candidates their Certificates of Nomination Indefinitely................................................................ 17

III.   Law and Argument ........................................................................ 18

    A.    Legal Standards........................................................................... 18

    B.    Plaintiffs Fail to State a Claim Under Federal Law. ................... 21

        1.    Plaintiffs' allegations and proposed district demonstrate that their Voting Rights Act claim must be dismissed..................... 21

            a.    Plaintiffs cannot satisfy the first *Gingles* precondition. ................................................................. 21

            b.    Because the Plaintiffs cannot satisfy the first precondition of *Gingles*, they cannot meet the totality-of-the-circumstances test.................................. 24

        2.    Plaintiffs' vote dilution claim fails to state a claim under Section 2 of the Fourteenth Amendment. ............................... 25

        3.    The Fifteenth Amendment also does not support Plaintiffs' vote-dilution claim. ................................................................. 26

4. Plaintiffs' First Amendment claim fails because that Amendment does not regulate redistricting or partisan gerrymandering. ...................................................... 27

5. Plaintiffs are not entitled to relief under Section 3 of the Voting Rights Act. ...................................................... 28

C. Plaintiffs Have Not Demonstrated Entitlement to a Temporary Restraining Order or a Preliminary Injunction. .................... 30

1. Plaintiffs Are Not Likely to Succeed on the Merits of Their Voting Rights Act Claim. ............................................ 30

2. The Plaintiffs Cannot Establish That They Will Suffer Irreparable Harm Without the Injunction. ...................... 30

3. The Injunction Would Cause Substantial Harm to Others...................... 31

 a. The *Purcell* Principle bars relief. ...................... 31

 b. Laches also bars injunctive relief. ...................... 33

4. The Requested Injunction Will Not Serve the Public Interest. ...................................................... 35

D. The Appointment of a Special Master is not Warranted...................... 35

IV. Conclusion ...................................................... 37

Certificate of Service ...................................................... 38

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*ACLU Fund of Mich. v. Livingston Cnty.*,
   796 F.3d 636 (6th Cir. 2015) ................................................................19

*Adams et al. v. DeWine et al.*,
   2022-Ohio-871 (Ohio March 18, 2022)..............................................16

*Adams et al. v. DeWine et al.*, 2022-Ohio-89 (Ohio 2022) ..................................14, 15

*Alexander v. Youngstown Bd. of Edn.*,
   675 F.2d 787 (6th Cir.1982) ..............................................................29

*Alshaibani v. Litton Loan Servicing, LP*,
   528 F.App'x 462 (6th Cir. 2013) ........................................................19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)....................................................................20, 21

*Armour v. Ohio*,
   775 F.Supp. 1044 (6th Cir. 1991) ..................................................25, 29

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)......................18

*Barron v. PGA Tour, Inc.*,
   670 F.Supp.2d 674 (W.D.Tenn.2009)..................................................19

*Benisek v. Lamone*,
   138 S.Ct. 1942 (2018) ........................................................................35

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................20

*City of Pontiac Retired Emps. Ass'n v. Schimmel*,
   751 F.3d 427 (6th Cir. 2014) ..............................................................19

*Cooper v. Harris*,
   137 S. Ct. 1455 (2017)........................................................................22

*Country Club v. Jefferson Metropolitan*,
   5 Ohio App.3d 77, 449 N.E.2d 460 (7th Dist. 1981)............................35

*Cousins v. Sundquist*,
   145 F.3d 818 (6th Cir. 1998) ........................................................13, 23

**Cases**                                                                            **Page(s)**

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008)..................................................................................................35

*Daugherty v. Sajar Plastics, Inc.*,
    544 F.3d 696 (6th Cir. 2008) ...................................................................................20

*DeBaca v. Cnty. of San Diego*,
    794 F. Supp. 990 (S.D. Cal. 1992)...........................................................................25

*State ex rel. Demaline v. Cuyahoga County Board of Elections*,
    90 Ohio St.3d 523, 2000-Ohio-108, 740 N.E.2d 242 (Ohio 2000) .........................34

*Diaz v. Silver*,
    932 F.Supp. 462 (E.D.N.Y.1996) ............................................................................36

*Dillard v. City of Greensboro*,
    956 F. Supp. 1576 (M.D. Ala. May 22, 1997)..........................................................36

*Dominquez v. Carr. Med. Servs.*,
    555 F.3d 543 (6th Cir. 2009) ...................................................................................21

*Estill v. Cool*,
    295 F. App'x 25 (6th Cir. 2008) ..............................................................................32

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
    489 U.S. 214 (1989).................................................................................................35

*Favors v. Cuomo*,
    866 F. Supp. 2d 176 (E.D.N.Y. 2012) .....................................................................36

*Gonidakis v. Ohio Redistricting Commission, et al.*,
    Case No. 2:22-cv-773, ECF No. 7 ...........................................................................17

*Gonzales v. Nat'l Bd. of Med. Examiners*,
    225 F.3d 620 (6th Cir. 2000) ...................................................................................19

*Granny Goose Foods, Inc.* v. *Teamsters*,
    415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974).........................................31

*Growe v. Emison*,
    507 U.S. 25, 113 S.Ct. 1075 (1993)..............................................................13, 22, 23, 25

*Hastert v. State Bd. of Elections*,
    777 F. Supp. 634 (N.D. Ill. 1991) ...........................................................................25

*Jeffers v. Clinton*,
    740 F.Supp. 585 (E.D.Ark.1990).............................................................................28

**Cases**                                                                          **Page(s)**

*Johnson v. De Grandy*,
    512 U.S. 997, 129 L. Ed. 2d 775, 114 S. Ct. 2647 (1994) ...................................... 23

*Jolivette v. Husted*,
    694 F.3d 760 (6th Cir. 2012) .......................................................................... 19, 30

*King Lincoln Bronzeville Neighborhood Ass'n v. Husted*,
    No. 2:06-cv-00745, 2012 WL 395030 (S.D.Ohio Feb. 7, 2012) (Marbley, J.) ...................... 34

*League of United Latin Am. Citizens (LULAC) v. Perry*,
    548 U.S. 399 (2006) .................................................................................... 23, 24

*League of Women Voters of Ohio et al. v. LaRose et al.*,
    Case No. 2022-0303 ...................................................................................... 16, 32

*Leary v. Daeschner*,
    228 F.3d 729 (6th Cir. 2000) ............................................................................... 30

*Libertarian Party v. Davis*,
    601 F.Supp. 522 (E.D.Ken. 1985) ......................................................................... 33

*McClafferty v. Portage County Board of Elections*,
    661 F.Supp.2d 826 (N.D. Ohio 2009) ...................................................................... 34

*Moldowan v. City of Warren*,
    578 F.3d 351 (6th Cir. 2009) ............................................................................... 20

*Neiman et al. v. LaRose et al.*,
    2022-Ohio-1016 (Ohio March 29, 2022) ................................................................. 16

*Neiman et al. v. LaRose et al.*, No. 2022-0298 (Ohio filed March 21, 2022) ............................... 16

*Nixon v. Kent Cnty.*,
    76 F.3d 1381 (6th Cir. 1996) ............................................................................... 23

*O'Shea* v. *Littleton*,
    414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ................................................. 31

*Patino v. City of Pasadena*,
    230 F. Supp. 3d 667 (S.D.Tex.2017) ...................................................................... 28

*Peeples v. City of Detroit*,
    891 F.3d 622 (6th Cir. 2018) ............................................................................... 20

*Perry v. Judd*,
    471 Fed. App'x. 219 (4th Cir. 2012) ...................................................................... 34

**Cases**                                                                   **Page(s)**

*Prejean v. Foster*,
227 F.3d 504 (5th Cir. 2000) ............................................26

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) (*per curiam*) ............................12, 13, 31, 32

*Reno v. Bossier Parish Sch. Bd.*,
528 U.S. 320 (2000) ............................................26

*Reynolds v. Sims*,
377 U.S. 533 (1964) ............................................36, 37

*Rodriguez v. Pataki*,
308 F. Supp. 2d 346 (S.D.N.Y. 2004) ............................22, 23, 24, 25

*Rucho v. Common Cause*
139S. Ct. 2484, 2508 (2019) ............................................27

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
859 F.2d 434 (6th Cir. 1988) ............................................18

*SEIU Local 1 v. Husted*,
698 F.3d 341 (6th Cir. 2012) ............................................32

*Simon et al. v. DeWine et al.*,
Case No. 4:21-cv-02267, ECF No. 3 ............................................17

*Strayhorn v. Wyeth Pharmaceuticals, Inc.*,
737 F.3d 378 (6th Cir. 2013) ............................................18

*Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*,
388 F.3d 547 (6th Cir. 2004) ............................................19

*Thompson v. DeWine*,
959 F.3d 804 (6th Cir. 2020) ............................................31, 32

*Thornburg v. Gingles*,
478 U.S. 30, 106 S. Ct. 2752 (1986) ............................................*passim*

*Tigrett v. Cooper*,
855 F. Supp. 2d 733 (W.D. Tenn. 2012) ............................................26

*Voinovich v. Quilter*,
507 U.S. 146, 122 L. Ed. 2d 500, 113 S. Ct. 1149 (1993) ............................23, 24, 27

*Webster Eisenlohr, Inc. v. Kalodner*,
145 F.2d 316 (3d Cir.1944), cert denied, 325 U.S. 867 (1945) ............................................35

**Cases**                                                                                      **Page(s)**

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir.1983) ...............................................................................29

*Winter v. NRDC, Inc.*,
    555 U.S. 7, 129 S.Ct. 365 (2008*)* .................................................................19, 31

**Statutes**                                                                                   **Page(s)**

52 U.S.C. 10301(a) ...............................................................................................21

52 U.S.C. 10302(c) ...................................................................................11, 28, 30

Ohio Rev. Code § 3513.22(E)...............................................................................18

**Other Authorities**                                                                          **Page(s)**

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1
    (2d ed. 1995) .................................................................................................31

Civ. R. 12(b)(6)....................................................................................................18

Fed. R. Civ. P. 41(a) .............................................................................................17

Fed. R. Civ. P. 53(a)(1).........................................................................................35

Fed. R. Civ. P. 56(a) .............................................................................................20

Ohio Const., Art.  XIX .........................................................................................14

Ohio Const., Art. XIX, § 1(A) ..............................................................................14

Ohio Const., Art. XIX, § 1(B) ..............................................................................14

Ohio Const., Art. XIX, § 1(C)(1)..........................................................................14

Ohio Const., Art. XIX, § 1(C)(2)..........................................................................14

Ohio Const., Art. XIX, § 1(C)(3)..........................................................................14

Ohio Const., Art. XIX, § 3 ....................................................................................15

Ohio Const., Art. XIX, § 3(B)(1)..........................................................................15

Ohio Const., Art. XIX, § 3(B)(2)..........................................................................15

**Other Authorities**                                                           **Page(s)**

U.S. Const., First Amendment ................................................................. *passim*

U.S. Const., Fourteenth Amendment ........................................................ *passim*

U.S. Const., Fifteenth Amendment .......................................................... *passim*

Voting Rights Act, S. Rep. No. 97-147 (1982) ....................................... *passim*

## STATEMENT OF THE ISSUES

1.      Whether the Plaintiffs have stated a claim under the Voting Rights Act upon which relief can be granted?

2.      Whether the Plaintiffs have stated a claim under the Fourteenth Amendment upon which relief can be granted?

3.      Whether the Plaintiffs have stated a cognizable claim under the Fifteenth Amendment?

4.      Whether the Plaintiffs have stated a claim under the First Amendment upon which relief can be granted?

5.      Whether the Plaintiffs have demonstrated an entitlement to injunctive relief?

## SUMMARY OF THE ARGUMENTS

Plaintiffs, a group of registered Black voters in Mahoning County, Ohio, claim that their right to vote was violated when the Ohio Redistricting Commission enacted a congressional district map (the "March 2 Plan") without considering racial demographics.  Plaintiffs bring claims for violations of the Voting Rights Act of 1965, Section 2 of the Fourteenth Amendment, the First Amendment, and the Fifteenth Amendment to the United States Constitution.  Plaintiffs ask this Court for a temporary restraining order and preliminary injunction to enjoin the Secretary of State from issuing certificates of nomination or election for representatives for the 6th Congressional District under the March 2 Plan and any district that "touches the 6th District and requires reconfiguration as a result of the 6th District's unconstitutionality."  *See Plaintiffs' Omnibus Motion*, ECF No. 4, PageID 490.   Plaintiffs ultimately want the March 2 Plan declared invalid and seek the appointment of a special master to draw new congressional districts.

This case must be dismissed because all of Plaintiffs' claims fail on the merits. *First*, Plaintiffs' Section 2 Voting Rights Act claim fails because Plaintiffs cannot establish the preconditions necessary to prevail on such a claim. *Second*, Plaintiff's claim under Section 2 of the Fourteenth Amendment fails as a matter of law because Plaintiffs set forth no set of facts that

would establish such a claim.  *Third*, Plaintiffs' claims under the First and Fifteenth Amendments must be dismissed because they are foreclosed by precedent.

This Court should likewise deny injunctive relief because Plaintiffs fail on all four factors for a temporary restraining order and preliminary injunction.  Again, Plaintiffs are not likely to succeed on the merits.  But also, Plaintiffs have not established that they will suffer irreparable harm without an injunction.  In fact, Plaintiffs' requested relief—to deny the primary winners of congressional districts their certificates of nomination would cause substantial harm to others and it contravenes the public interest.  Finally, Plaintiffs' request for injunctive relief is barred by *Purcell v. Gonzalez,* 549 U.S. 1, 4-5 (2006) (*per curiam*), and by the doctrine of laches because Plaintiffs sat by while the March 2 Plan was being litigated and continues to be litigated in the Ohio Supreme Court.   For all of these reasons, Plaintiffs' omnibus motion should be denied and their Complaint should be dismissed.

## MEMORANDUM IN SUPPORT

## I.       INTRODUCTION

Ohio passed a Congressional Plan on March 2, 2022, and implemented it in time for the May 3 primary election.  In fact, just yesterday on Election Day voters across the state casted their votes.  The primary election has now yielded winning Republican and Democratic candidates for all 15 congressional districts who will go on to compete in the November 8, 2022, general election.

Plaintiffs now seek to disrupt Ohio's 2022 election of its 15 congressional representatives because they claim that the 6th Congressional District in the March 2 Plan is "constitutionally infirm" under Section 2 of the Voting Rights Act.  They ask this Court to enjoin the Secretary of State from issuing certificates of nomination to the winning candidates of the May 3 primary election so they can litigate their constitutional claims, even if it means that *no* candidates will appear on the general election ballot.

To describe such an injunction as "havoc wreaking" would not be hyperbolic here. Allowing an election to occur then enjoining the winners from proceeding on to the general election would cause significant voter confusion, it would cripple Ohioans' trust and confidence in their elections, and it would be astoundingly unfair—not just to Ohio voters but to the congressional candidates who have spent effort, time and resources in campaigning for a spot on the primary ticket.  The requested injunction also lacks all clarity in scope and duration.  Even if this Court could issue the injunction, it shouldn't because the election has already occurred and restraint is required under *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (*per curiam*).

Litigation over Ohio's congressional redistricting has been raging on for nearly six months in the Ohio Supreme Court.  The Plaintiffs sat on the sidelines and never brought their claims in that forum.  Yes, they urged this Court to intervene but their action was stayed in respect of the Ohio Supreme Court's original jurisdiction.  Even with their federal court action paused, the Plaintiffs still did not throw their hat in the state court ring.  Because the Plaintiffs failed to act diligently in litigating their claims, laches bars injunctive relief.

Nor can the Plaintiffs succeed on the merits of their Voting Rights Act claim.  As a voting bloc, they are not "sufficiently large and geographically compact to constitute a majority in a single-member district," which is required of all vote dilution claims under the Voting Rights Act. *Growe v. Emison*, 507 U.S. 25, 40, 113 S.Ct. 1075 (1993).  The Plaintiffs, by their own allegations and evidence, constitute only an influential vote in a congressional district. *See Motion*, ECF No. 4, PageID 504 ("Under the districts proposed by the Plaintiffs the total voting aged white population is 333,776. The total voting aged Black population is 284,338."); *see also* Ex. F. Influence claims are not viable under the Voting Rights Act. *Cousins v. Sundquist*, 145 F.3d 818,

828 (6th Cir. 1998).  Thus, as a matter of law, the Plaintiffs are not likely to succeed on the merits of their claim.

Plaintiffs other claims also fail on their merits.  Plaintiffs' claim under Section 2 of the Fourteenth Amendment claim fails as a matter of law.  And Plaintiffs' claims under the First and Fifteenth Amendments can be dismissed because they are foreclosed by precedent.

## II.   FACTUAL BACKGROUND

### A.   Congressional Redistricting Under Article XIX of the Ohio Constitution.

Article XIX of the Ohio Constitution provides the three-step framework for drawing Ohio's fifteen congressional districts.  First, by September 30 of any year ending in the numeral one after the release of the federal decennial census, the General Assembly must pass a district plan in the form of a bill by a vote of at least three-fifths of the members of each of the two largest political parties.  Ohio Const., art. XIX, § 1(A); *Adams et al. v. DeWine et al.*, 2022-Ohio-89, ¶ 8 (Ohio 2022).   If the General Assembly passes a plan in this first step, the plan remains valid for ten years. *Id.*

Second, if the General Assembly fails to pass a plan in the first step by September 30, the Ohio Redistricting Commission must adopt a plan by October 31.  Ohio Const., art. XIX, § 1(B), *Adams* at ¶ 9.  The Commission must approve a plan by a majority vote, which must include at least two members from each of the two largest political parties. *Id.*  If the Commission passes a plan in this second step by the required vote, the plan will also remain valid for ten years. *Id.*

Third, if the Commission does not pass a plan in the second step by October 31, the General Assembly must pass a plan as a bill by November 30.  Ohio Const., art. XIX, § 1(C)(1), *Adams* at ¶ 10.   If the General Assembly passes the plan by a three-fifths vote of each house, the plan is valid for ten years. Ohio Const., art. XIX, § 1(C)(2).  A plan approved by a simple majority of each house is valid for four years. Ohio Const., art. XIX, § 1(C)(3).

14

Ohio Constitution article XIX, section 3, gives the Ohio Supreme Court exclusive, original jurisdiction over all cases involving the drafting of a congressional district plan and it sets forth the exclusive remedies should the Court invalidate a congressional plan.  *See Adams* at ¶ 12. Section 3(B)(1) sets out a two-step process for remedying an invalidated plan.  First, the General Assembly must pass a plan "in accordance with the provisions of this constitution that are then valid" within thirty days after the Ohio Supreme Court's invalidation order. Ohio Const., art. XIX, § 3(B)(1), *Adams* at ¶ 97.  Second, if the General Assembly does not pass a plan within the thirty-day deadline, then the Ohio Redistricting Commission has thirty days to "adopt a congressional district plan in accordance with the provisions of this constitution that are then valid."  Ohio Const., art. XIX, § 3(B)(2), *Adams* at ¶ 98.

**B.**     **The May 3 Primary Election Proceeded with the Second Congressional Plan passed by the Ohio Redistricting Commission on March 2, 2022.**

"Based on the results of the 2020 census, Ohio was apportioned 15 congressional seats— one fewer than it was apportioned in 2011." *Adams* at ¶ 13.  The General Assembly did not pass a new congressional plan by the September 30, 2021, deadline and the Ohio Redistricting Commission did not pass a plan by the October 31, 2021, deadline.  *Adams* at ¶¶ 13-14; *see also* Ohio Const., art. XIX, §§ 3(B)(1) and (2).   On the third step, however, the General Assembly adopted Ohio's Congressional Plan by a simple majority via S.B. No. 258 on November 16, 2021. *Adams* at ¶ 21.

Ten days later, two sets of petitioners brought lawsuits at the Ohio Supreme Court challenging the constitutionality of the November 16, 2021, Congressional Plan.  *Adams* at ¶ 23. On January 14, 2022, the Ohio Supreme Court invalidated the November 16, 2021, Congressional Plan and ordered the General Assembly to pass a new congressional district plan. *Id.* at ¶ 102.

The General Assembly did not pass a new congressional plan within thirty days of the Ohio Supreme Court's January 14, 2022, invalidation order.  Thus, the Ohio Redistricting Commission was reconvened and it passed a new Congressional Plan on March 2, 2022.  *See* March 2 Plan, Ex. A.  On the same day, the Secretary of State issued Directive 2022-27 where he instructed the county boards of election to implement the March 2 Plan in time for the May 3 primary election. *See* Directive 2022-27, Ex. B.

Meanwhile, on March 4, 2022, the Adams Petitioners filed motions with the Ohio Supreme Court seeking to have the March 2 Plan invalidated.  *Adams et al. v. DeWine et al*., 2022-Ohio-871 (Ohio March 18, 2022) (Case announcements entry).  On March 18, 2022, the Ohio Supreme Court denied the motions ruling that it "entered final judgment in this case on January 14, 2022, and did not retain jurisdiction to review any plan passed or adopted on March 2, 2022." *Id.* Despite the fact that the Ohio Supreme Court did not retain jurisdiction to review additional congressional plans passed after it invalidated the first one, on March 22, 2022, the same petitioners filed original actions before the Ohio Supreme Court challenging the March 2 Plan. *League of Women Voters of Ohio et al. v. LaRose et al.*, Case No. 2022-0303; *Neiman et al. v. LaRose et al*., No. 2022-0298 (Ohio filed March 21, 2022).  The Ohio Supreme Court has ordered discovery and a full briefing schedule in those new cases.  Assuming that no further delays occur and no oral arguments are allowed, the new original actions against the March 2 Plan will not be decisional until late May, 2022.  *Neiman et al. v. LaRose et al*., 2022-Ohio-1016 (Ohio March 29, 2022 (Case announcements entry)).  Thus, there is no longer any dispute that the March 2 Plan has been fully implemented by the 88 county boards of election and has been used for the May 3 primary election and the 2022 general election.  *See* Ex. B.

C. **The Plaintiffs Sat Out During Litigation over the Congressional Plan at the Ohio Supreme Court.**

The Plaintiffs are a group of Black voters residing in the 6th U.S. Congressional District in the March 2 Plan, who allege violations of the Voting Rights Act, and the Fifteenth, Fourteenth and First Amendments to the U.S. Constitution.  *Compl*, ECF No. 1 at PageID 21-25, ¶¶ 62-65, 69-72, 76, 78.  They did not bring these claims at any time during the last six months of litigation over congressional redistricting at the Ohio Supreme Court.   Instead, the Plaintiffs filed a complaint and a motion for injunctive relief in this Court in December, claiming that the first congressional plan violated Section 2 of the Voting Rights Act and the Fifteenth Amendment to the U.S. Constitution.  *Simon et al. v. DeWine et al.*, Case No. 4:21-cv-02267, ECF No. 3 at PageID 75.  This Court stayed the case pending resolution of the matter at the Ohio Supreme Court. *Id.* at ECF No. 21 at PageID 1274-1276.  On March 22, 2022, the Plaintiffs voluntarily dismissed their federal action pursuant to Fed. R. Civ. P. 41(a).  *Id.* at ECF No. 24 at PageID 1283.

The Plaintiffs intervened in an apportionment action filed by another group of voters in the District Court for the Southern District of Ohio. *Gonidakis v. Ohio Redistricting Commission, et al.*, Case No. 2:22-cv-773, ECF No. 7, PageID 445. But the Southern District ruled that the relief sought by the Plaintiffs with respect to the congressional district map exceeded the scope of the permitted intervention, as the *Gonidakis* parties only sought relief for the general assembly district map. *Id.* at ECF No. 185, PageID 6013.

D. **Plaintiffs Want to Deny the *Winning* Candidates their Certificates of Nomination Indefinitely.**

The Plaintiffs now move this Court for a temporary restraining order, preliminary injunction, partial summary judgment, and the appointment of a special master based on their theory that the Defendants violated Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 et. seq., by disregarding race in the drafting of the 6th Congressional District in the March 2 Plan.

*See Motion*, ECF No. 4 at PageID 488.  The Plaintiffs request an immediate order prohibiting the Secretary of State and "any County Board of Elections from a county within the 6th Ohio United States Congressional District….or Board of Elections within a Proposed Congressional District whose boundaries may be revised in the event the Plaintiffs prevail on the merits at trial" from issuing "certificates of nomination or election to any candidate for election as Representative to the United States House of Representatives."  *See Proposed Order*, ECF No. 4-7 at PageID 1011. In other words, the Plaintiffs don't want the May 3 primary election for Ohio's congressional districts to count. They seek an order from this Court to prohibit the Secretary of State from issuing certificates of nomination to the winning candidates ostensibly until this Court can rule on the merits of their claims.  *Id; see also* Ohio Rev. Code § 3513.22(E).

## III.    LAW AND ARGUMENT

### A.    Legal Standards

**Rule 12(b)(6) Dismissal Standard** - Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). When ruling on a Rule 12(b)(6) motion, the Court must determine whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 435 (6th Cir. 1988). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Strayhorn v. Wyeth Pharmaceuticals, Inc.*, 737 F.3d 378, 387 (6th Cir. 2013), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct.1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must accept all of Plaintiffs' well-pleaded factual allegations as true and

construe them in a light most favorable to Plaintiffs . . . ." *Alshaibani v. Litton Loan Servicing, LP*, 528 F.App'x 462, 463-64 (6th Cir. 2013). The Court, however, need not accept "legal conclusions or unwarranted factual inferences," and "a formulaic recitation of the elements of a cause of action will not do." *Id*.

**Injunctive Relief Standard** - "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Barron v. PGA Tour, Inc*., 670 F.Supp.2d 674, 682 (W.D.Tenn.2009) (citation omitted.). The movant "bears the burden of justifying such relief," and it is "never awarded as of right." *ACLU Fund of Mich. v. Livingston Cnty.,* 796 F.3d 636, 642 (6th Cir. 2015). When determining whether to grant a party's request for such a remedy, district courts must balance four factors: "'(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation omitted).

As to the first factor, a plaintiff must establish a "strong" likelihood of success on the merits. *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (quotation omitted). The mere possibility of success does not suffice. *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004). Also, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). Similarly, as to the second factor, the plaintiff must show a likelihood, not just a possibility, of irreparable injury. *Winter v. NRDC,*

*Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365 (2008*).  As discussed more fully below, the Plaintiffs fail on all counts.

**Summary Judgment Standard** - Summary judgment is appropriate if the evidence in the record demonstrates there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Moldowan v. City of Warren*, 578 F.3d 351, 373 (6th Cir. 2009) ("Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." (quotation omitted)).  The moving party bears the initial burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party has met its burden, "the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'"  *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993)).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment."  *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Liberty Lobby*, 477 U.S. at 248).  In other words, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff." *Liberty Lobby*, 477 U.S. at 252; *Dominquez v. Carr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (same).

> **B.      Plaintiffs Fail to State a Claim Under Federal Law.**

> **1.      Plaintiffs' allegations and proposed district demonstrate that their Voting Rights Act claim must be dismissed.**

Plaintiffs' claim that the Ohio Redistricting Commission's March 2 Congressional Redistricting Plan violates the Voting Rights Act fails as a matter of law and should be dismissed. Specifically, they cannot meet either step of the two-step process to prove a Section 2 "vote dilution" claim. Plaintiffs cannot show the first precondition articulated in *Thornburg v. Gingles*, 478 U.S. 30, 106 S. Ct. 2752 (1986), to prove that the electoral structure operates to impair Black voters' ability to elect the congressional representative of their choice.  And, because the Plaintiffs cannot demonstrate the first precondition under *Gingles*, they cannot satisfy the totality-of-the-circumstances test.

> **a.      Plaintiffs cannot satisfy the first *Gingles* precondition.**

The Plaintiffs claim that the Ohio Redistricting Commission's March 2 Congressional Redistricting Plan violates Section 2 of the Voting Rights Act.  That provision prohibits voting practices that "result[] in a  denial or abridgment of the right . . . to vote on account of race or color." 52 U.S.C. 10301(a).  Under Section 2, such a denial or abridgment is only established if the members "of a class of citizens . . . have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."  *Id.* 10301(b).

To decide whether that standard is met, the Supreme Court has established three "necessary preconditions" for proving that an electoral structure "operate[s] to impair minority voters' ability to elect representatives of their choice."  *Thornburg v. Gingles*, 478 U.S. 30, 50, 106 S. Ct. 2752 (1986).  Plaintiffs must establish by a preponderance of the evidence (1) that the minority group is

"sufficiently large and geographically compact to constitute a majority in a single-member district;" (2) that [the minority group] is "politically cohesive;" and (3) that "the white majority vot[es] sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Growe v. Emison*, 507 U.S. 25, 40, 113 S. Ct. 1075 (1993) (quoting *Gingles*, 478 U.S. at 50-51). "Unless each of the three *Gingles* prerequisites is established, there neither has been a wrong nor can be a remedy." *Cooper v. Harris*, 137 S. Ct. 1455, 1472 (2017) (quotations omitted).  Thus, failure to prove any one of the preconditions is fatal on the merits.

With regard to the first *Gingles* precondition, "the reason that a minority group . . . must show, as a threshold matter, that it is sufficiently large and geographically compact to constitute a majority in a single-member district is this: Unless minority voters possess the potential to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by that structure or practice." *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 372 (S.D.N.Y. 2004) (quoting *Gingles* at 50 n.17).  "Because the very concept of vote dilution implies—and, indeed, necessitates—the existence of an 'undiluted' practice against which the fact of dilution may be measured, a § 2 plaintiff must also postulate a reasonable alternative voting practice to serve as the benchmark 'undiluted' practice." *Rodriguez*, 308 F. Supp. at 372 (quoting *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 480, 117 S. Ct. 1491 (1997).

Here, the Plaintiffs do not plausibly allege in their Complaint that their minority group is "sufficiently large and geographically compact to constitute a majority in a single-member district."  Rather, they allege that they "presented a proposed district to Defendants" that "would constitute a district with a black voting majority" and cite to "Exhibit D." Compl., ECF No. 1, PageID 17, ¶ 47. But Exhibit D ostensibly shows that the African American population in the proposed district is 284,938, while the White population in the proposed district is 333,776.  Thus,

the Plaintiffs' own exhibit contradicts their allegation—the African American population in the proposed district *does not* constitute a majority. Plaintiffs concede as much a few paragraphs later, stating "the White *majority* in the Defendant proposed district vote sufficiently as a bloc to enable it to defeat the Blacks' preferred candidate." *See Compl.*, ECF No. 1 at PageID 19, ¶ 50 (emphasis added).

Further, the Plaintiffs claim that these voters "constitute a *determinative* vote in a Congressional District," rather than a majority or controlling vote. *See Compl.*, ECF No. 1 at PageID 19, ¶ 50 (emphasis added). This allegation is just another way of saying the minority group constitutes an influential vote. An "influence" claim, however, where the minority group would *not* be a majority of voters, is not permitted under the Voting Rights Act. *See, e.g., Cousin v. Sundquist*, 145 F.3d 818, 828 (6th Cir. 1998) (announcing that Section 2 violations cannot "consist of an impairment of the minority's ability to influence the outcome of the election rather than determine it."); *see also League of United Latin Am. Citizens (LULAC) v. Perry*, 548 U.S. 399, 425 (2006); *Nixon v. Kent Cnty.*, 76 F.3d 1381, 1386 (6th Cir. 1996).

In fact, since *Gingles*, the Supreme Court has repeatedly declined to reach the issue of whether vote-dilution claims are viable when the minority group is less than a majority of voters in a proposed district. *See Johnson v. De Grandy*, 512 U.S. 997, 1008-09, 129 L. Ed. 2d 775, 114 S. Ct. 2647 (1994); *Voinovich v. Quilter*, 507 U.S. 146, 158, 122 L. Ed. 2d 500, 113 S. Ct. 1149 (1993); *Growe v. Emison*, 507 U.S. 25, 41 n. 5, 113 S. Ct. 1075 (1993). And, federal courts have nearly unanimously "adopted the literal reading of *Gingles* and have rejected claims where the minority group does not constitute a majority of voters in a single-member district." *Rodriguez*, 308 F. Supp. 2d at 376 (citing *Hall v. Virginia*, 276 F. Supp. 2d 528 (E.D. Va. 2003) (listing cases and stating that bright-line majority-in-a-district rule is well-established)). Because the Plaintiffs

have presented what amounts to an influence-dilution claim, they cannot satisfy the first precondition under *Gingles*, and therefore cannot satisfy the first step of the two steps to proving a Section 2 vote dilution claim.

> **b.      Because the Plaintiffs cannot satisfy the first precondition of *Gingles*, they cannot meet the totality-of-the-circumstances test.**

In addition to the *Gingles* preconditions, a plaintiff asserting a vote dilution claim must show "that, under the totality of the circumstances, the State's apportionment scheme has the effect of diminishing or abridging the voting strength of the protected class." *Voinovich v. Quilter*, 507 U.S. 146, 157, 113 S. Ct. 1149 (1993).  This is the second step of the statutory test.  *See League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 425, 126 S. Ct. 2594, 2613 (2006).  The relevant inquiry typically includes "the list of factors set forth in the United States Senate Judiciary Report ('Senate Report') accompanying the 1982 bill amending section 2 of the Voting Rights Act, S. Rep. No. 97-147, at 2 (1982) ('Senate Factors'), but this is neither a 'comprehensive nor exclusive' list." *Rodriguez*, 308 F. Supp. 2d at 372 (quoting *Gingles*, 478 U.S. at 44-45).

Here, though the Plaintiffs make token mentions of "totality of the circumstances," neither their Complaint or their Motion contain any explanation for how the Court would even consider "step two" when the Plaintiffs could not meet "step one."  What is more, the Plaintiffs' alleged indicia of discrimination does not even relate to the March 2 Plan.  In their Complaint, the Plaintiffs quote statements by a mapmaker who stated that race was not considered in drawing the *General District Plan* and not the March 2 Plan.  *See Compl*., ECF. No. 1 at PageID 8, ¶ 17; Pls.' Ex. C. Even if the Plaintiffs could provide the same statements about the March 2 Plan, it would still be of no value to their claim of racial discrimination.  There is still no legal authority for the Plaintiffs' theory that  disregarding race in map-drawing is a per se violation of Section 2 of the Voting Rights Act or that it supports a claim of intentional discrimination.

24

The Plaintiffs also point to "historical findings set forth by this Court in *Armour v. Ohio*, 775 F.Supp. 1044 (6th Cir. 1991), concerning the role of race relations in Mahoning County." *See* Motion, ECF No. 4 at PageID 493. *Armour* is a roundly criticized case in which the court based its decision, at least in part, on a finding that *Gingles* did not apply to single-member-district claims. *See, e.g., Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 383 n.42 (S.D.N.Y. 2004); *DeBaca v. Cnty. of San Diego*, 794 F. Supp. 990, 996 (S.D. Cal. 1992); *Hastert v. State Bd. of Elections*, 777 F. Supp. 634, 652 (N.D. Ill. 1991). The case was arguably overruled by the Supreme Court in *Growe v. Emison*, 507 U.S. 25, 113 S. Ct. 1075, which found that the *Gingles* preconditions do indeed apply to single member districts. Moreover, *Armour* involved a challenge solely to Ohio House Districts 52 and 53 and the injunction issued was limited solely to those state house districts. 755 F. Supp. at 1062 ("[W]e enjoin the defendants from using the current house district configurations for future elections."). Finally, its analysis of the race relations in Mahoning County are hardly still relevant 30 years later. Thus, *Armour* does nothing to support the Plaintiffs' claim.

### 2. Plaintiffs' vote dilution claim fails to state a claim under Section 2 of the Fourteenth Amendment.

Plaintiffs' claim that Defendants committed intentional racial discrimination in violation of Section 2 of the Fourteenth Amendment is both legally and factually deficient. *See* Compl, Second Claim for Relief., ECF No. 1, Page ID 22. The basis for their claim is that "the March 2 Plan...abridges the rights of Black Ohioans to vote because the Plan was devised without consideration of the circumstances applicable to Black voters." *Id*. at PageID 23, ¶ 71. Plaintiffs further claim that intentional discrimination can be inferred from the *Armour* case, an alleged discriminatory impact by the March 2 Plan, and a "tenuous and pretextual nature" of the Plan's stated justification. *Id*. at ¶ 72.

25

Plaintiffs simply fail in all respects to state a claim.  They can offer no legal authority that Section 2 of the Fourteenth Amendment enjoys *any* legal relevance to their vote dilution claim as set forth in their Complaint, or that the facts alleged in their Complaint even make out a viable claim under that provision of the U.S. Constitution.  Moreover, even if Plaintiffs could establish that Section 2 of the Fourteenth Amendment is a viable legal claim, Plaintiffs still fail to allege facts sufficient to establish intentional racial discrimination.  *See also*, Sec. (B)(1)(b).  Indeed, Plaintiffs can offer no legal support for the notion that the *lack* of racial consideration amounts to *intentional* discrimination.  Thus, Plaintiffs' claim under Section 2 of the Fourteenth Amendment fails as a matter of law.

### 3. The Fifteenth Amendment also does not support Plaintiffs' vote-dilution claim.

Plaintiffs allege in their Third Claim for Relief that the Defendants violated the Fifteenth Amendment in enacting the March 2 Plan. But a claim under the Fifteenth Amendment is not cognizable here because Plaintiffs' "freedom to vote has not been denied or abridged by anyone"— that is, they do not claim that they are unable to "register and vote without hindrance." *Reno v. Bossier Parish Sch. Bd*., 528 U.S. 320, 334 n.3 (2000) (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 65 (1980)); *see Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000) ("When a legislative body is apportioned into districts, every citizen retains equal rights to vote for the same number of representatives, even if not for all of them, and every citizen's ballot is equally weighed.").

Instead, Plaintiffs allege a vote-dilution claim under the Fifteenth Amendment. *See Compl*., ECF No. 1, ¶¶ 7, 15, 47, 52. Precedent forecloses that argument. *See Bossier Parish Sch. Bd*., 528 U.S at 334 n. 3 ("W[e] have never held that vote dilution violates the Fifteenth Amendment . . . [and] we have never even 'suggested' as much.") (internal citations and quotations omitted); *see also Tigrett v. Cooper*, 855 F. Supp. 2d 733, 748 (W.D. Tenn. 2012) ("Under current law, vote

26

dilution does not give rise to a cause of action under the Fifteenth Amendment. Unless and until a court with higher authority rules to the contrary, for the Court to allow Plaintiffs' Fifteenth Amendment claim to proceed under a vote dilution theory would be to step beyond the bounds of clearly delineated precedent into the sphere of speculation."). Indeed, the Supreme Court has "never [] held any legislative apportionment inconsistent with the Fifteenth Amendment." *Voinovich v. Quilter*, 507 U.S. 146, 159 (1993). Plaintiffs' claims are no different than those rejected by the Supreme Court. Therefore, Plaintiffs' Third Claim for Relief fails as a matter of law and should be dismissed.

> **4.    Plaintiffs' First Amendment claim fails because that Amendment does not regulate redistricting or partisan gerrymandering.**

Plaintiffs' Fourth Claim for Relief alleges that the March 2 Plan violates the First Amendment because it is allegedly dilutes the votes of Black voters in Mahoning County and "result[s] in denial to the Simon Parties of opportunity to elect representatives of choice." *See* Compl., ECF No. 1, PageID 25, ¶¶ 77-82.  That claim fails because the First Amendment does not regulate redistricting.

Plaintiffs cite no authority for the proposition that the First Amendment has anything to say about redistricting generally. No court has entertained a challenge that redistricting itself violates the First Amendment. If that is Plaintiffs' claim, it should be dismissed.

To the extent Plaintiffs mean to make a partisan gerrymandering claim under the First Amendment, that also claim fails because it is foreclosed by precedent. Plaintiffs allege that Defendants "approved, along party lines" a "partisan Congressional redistricting plan[]," *see id.* at ¶ 3, and violated their duties "in favor of a partisan advantage," *see id.* at ¶ 15. But *Rucho v. Common Cause* holds that partisan gerrymandering claims are nonjusticiable political questions and federal courts lack jurisdiction to entertain them. 139 S. Ct. 2484, 2508 (2019). Indeed, *Rucho*

specifically rejected the claim that the First Amendment is an avenue for federal-court review of partisan gerrymandering claims, holding that partisan gerrymandering doesn't restrict "speech, association, or any other First Amendment activities . . . ." *Id.* at 2504. If this is Plaintiffs' claim, the Fourth Claim for Relief of Plaintiffs' Complaint is foreclosed by precedent and must be dismissed.

> ### 5. Plaintiffs are not entitled to relief under Section 3 of the Voting Rights Act.

In both their Complaint and their Motion, the Plaintiffs ask for relief under Section 3 of the Voting Rights Act. In light of the above, Plaintiffs are not entitled to relief under Section 3.

Section 3(c) allows a court that has found violations of the Fourteenth or Fifteenth Amendment to (1) determine a period that it may retain jurisdiction over an election matter, and (2) require preclearance with the Department of Justice over election related matters through Section 5 of the Voting Rights Act. 52 U.S.C.S. 10302(c). Thus, a court must determine "(1) whether violations of the Fourteenth or Fifteenth Amendments justifying equitable relief have occurred within the State or any of its political subdivisions; and (2) whether, if so, the remedy of preclearance should be imposed." *Jeffers v. Clinton*, 740 F.Supp. 585, 587 (E.D.Ark.1990). The case *Patino v. City of Pasadena* helps show how a court implements the retention of jurisdiction along with the remedy of preclearance. *Patino v. City of Pasadena*, 230 F. Supp. 3d 667 (S.D.Tex.2017). In *Patino*, for example, having found a Fourteenth Amendment violation, the court granted the plaintiffs' request under Section 3(c) "to submit future changes to its electoral map and plan to the Department of Justice for preclearance." *Id.* at 729. The Court also granted the "request for an order under [Section] 3(c) to retain jurisdiction." *Id.*

Section 3(c) is a future looking remedy that a court affords *after* violations of the Fourteenth or Fifteenth Amendment have been determined. Here, this Court has not yet made any

determinations as to the alleged Fourteenth and Fifteenth Amendment violations, and thus, any argument that this Court should apply Section 3(c) to find preclearance here is improper.

The language of Section 3(c), and the case law surrounding Section 3(c), suggest that after a court has found a Fourteenth or Fifteenth Amendment violation, it must *explicitly* state, such as in the form of an order, that it is requiring future preclearance through the Department of Justice, and/or that it is retaining jurisdiction as it relates to the Constitutional violations.

To the extent that the Plaintiffs rely on *Armour v. Ohio.*, 775 F.Supp. 1044, 1050 (N.D.Ohio 1991) for a Fifteenth Amendment violation, and *Williams v. Vukovich*, 720 F.2d 909, 912 (6th Cir.1983) and *Alexander v. Youngstown Bd. of Edn.*, 675 F.2d 787, 792 (6th Cir.1982) for Fourteenth Amendment violations, as reasons for preclearance under Section 3(c), that claim also fails. As explained above, for effective preclearance or jurisdictional retention, a court must have explicitly stated they requiring preclearance and/or retaining jurisdiction over a matter. While this Court found a Fifteenth Amendment violation in *Armour*, it only retained jurisdiction on the matter so that it could "consider plaintiffs' request for an order directing the state to adopt plaintiffs' proposed districts." *Armour*, 775 F.Supp. at 1063. The scope of the Court's jurisdictional retention did not extend beyond those boundaries. Additionally, this Court did not go so far as to require this State or any political subdivision to obtain preclearance through the Department of Justice. *Id.* And in both *Vukovich* and *Alexander*, the Sixth Circuit made no mention of requiring preclearance or retaining jurisdiction. *Williams v. Vukovich*, 720 F.2d 909 (6th Cir.1983); *Alexander v. Youngstown Bd. of Edn.*, 675 F.2d 787 (6th Cir.1982).

Finding that preclearance is required, or that this Court retained jurisdiction as a result of these cases, would create hesitancy and confusion for Ohio and its political subdivisions. It would set the precedent that this State or a political subdivision may be subject to additional statutory

preclearance, even though they have not been put on notice of this requirement.  Such a finding would ultimately render Sections 3(c) and 5 of the Voting Rights Act obsolete.  Thus, the Defendants were not under a duty to get preclearance for the 6th Congressional District, nor did this Court at any time retain jurisdiction under Section 3(c) as to election related matters.

### C.  Plaintiffs Have Not Demonstrated Entitlement to a Temporary Restraining Order or a Preliminary Injunction.

To obtain a temporary restraining order or a preliminary injunction, Plaintiffs must show: (1) they have strong likelihood of success on the merits; (2) they would suffer irreparable injury absent the injunction; (3) issuance of an injunction would not cause substantial harm to others; and (4) the public interest would be served by issuance of an injunction. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).  Plaintiffs cannot demonstrate any of these factors.

### 1.  Plaintiffs Are Not Likely to Succeed on the Merits of Their Voting Rights Act Claim.

To be entitled to preliminary relief, a plaintiff must establish a strong likelihood of success on the merits. *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012). For the reasons discussed in Section III.B above, Plaintiffs have no likelihood of success on their claims.

### 2.  The Plaintiffs Cannot Establish That They Will Suffer Irreparable Harm Without the Injunction.

The Plaintiffs thinly allege, without more, that they will "suffer irreparable harm if the 2022 elections are conducted using constitutionally infirm districts." *See Motion*, ECF No. 4 at PageID 508-09.  They fall short in their showing of irreparable injury because they fail to show that the March 2 Plan is "constitutionally infirm" under Section 2 of the Voting Rights Act, as set forth above.  Nor has the Ohio Supreme Court invalidated the Plan under the Ohio Constitution. The Plan is currently valid and it has been fully implemented for the 2022 primary and general elections.  Whether the Plan will be invalidated at some time in the future is pure speculation.

Parties seeking preliminary injunctive relief must show more than the speculation of future irreparable harm.  "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) *citing Los Angeles* v. *Lyons*, 461 U.S. 95, 103, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); *Granny Goose Foods, Inc.* v. *Teamsters*, 415 U.S. 423, 441, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974); *O'Shea* v. *Littleton*, 414 U.S. 488, 502, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974); *see also* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed. 1995) (hereinafter Wright & Miller) (applicant must demonstrate that in the absence of a preliminary injunction, "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered"); *id*., at 154-155 ("A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury"). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citing *Mazurek* v. *Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (*per curiam*)).  Because the Plaintiffs cannot show the likelihood of actual irreparable harm absent an injunction, their motion for injunctive relief must be denied.

### 3.    The Injunction Would Cause Substantial Harm to Others.

#### a.    The *Purcell* Principle bars relief.

The Plaintiffs ask this Court to do what courts have been resoundingly unwilling to do and have cautioned against:  change an election procedure to affect the outcome of the election.  *See e.g.*, citing *Purcell v. Gonzalez,* 549 U.S. 1, 4-5 (2006) (*per curiam*) (denying preliminary injunction because, although plaintiffs had established third parties would not be unjustifiably harmed by an injunction, "court orders affecting elections. . , can themselves result in voter confusion[,] [a]s an election draws closer, that risk increase"); *Thompson v. DeWine*, 959 F.3d

804, 813 (6th Cir. 2020) (citing *Purcell* in staying district court's preliminary injunction); *Estill v. Cool,* 295 F. App'x 25, 27 (6th Cir. 2008) (upholding denial of preliminary injunction where ballot printing and distribution was scheduled to begin the day after the Sixth Circuit issued its opinion, 19 days after the preliminary injunction motion was denied); *SEIU Local 1 v. Husted,* 698 F.3d 341, 345 (6th Cir. 2012), citing *Purcell,* 549 U.S. at 4-5 ("As a general rule, last-minute injunctions changing election procedures are strongly disfavored."). "Court orders affecting elections especially conflicting court orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell,* 549 U.S. at 4-5; *see also Thompson*, 959 F.3d at 813.

Citing that risk, in *League of Women Voters v. LaRose*, the Court rejected the plaintiffs' request to preliminarily enjoin H.B. 197, the bill passed in response to the disruption to Ohio's March 2020 primary caused by COVID-19. No. 2:20-cv-1638, 2020 U.S. Dist. LEXIS 91631, *31 (S.D. Ohio Apr. 3, 2020). The court noted that the "public has an interest in a free and fair election [and in] avoiding further voter confusion." *Id.* Even amidst the COVID-19 outbreak, the court concluded "because further changes to the election procedure could cause significant additional voter confusion, the court finds that the public interest factor weighs against granting Plaintiffs their requested relief." *Id.*

The Plaintiffs' request to stop the Secretary of State from issuing certificates of nomination to the May 3 primary election winners while they litigate their claims is, to say the least, extraordinarily ill-advised. The May 3 Primary Election has already happened. All of the voters who have voted for their congressional candidates fully expect the winners to be on the November general election ballot. Issuing an injunction that prohibits the winners from being certified for the general election ballot destroys the status quo and wreaks havoc on election administration.

32

What is more, allowing an election to occur then enjoining the winners from proceeding on to the general election certainly would cause significant voter confusion, it would cripple Ohioans' trust and confidence in their elections, and it would be astoundingly unfair—not just to Ohio voters but to the congressional candidates who have spent effort, time and resources in campaigning for a spot on the primary ticket.  It is safe to assume that voters expect their votes to count and to be counted.  An injunction that would block the winners and nullify the entire election *after* all of the votes have been cast would wreak havoc on voter confidence for decades to come.  This is precisely what the Plaintiffs demand and this Court should summarily deny it.

The Plaintiffs also fail to explain how this Court would implement and oversee such an injunction.  First, its scope is completely undefined and it cannot be determined with any certainty.  The Plaintiffs seek to enjoin the 6th District and any district that would be impacted by a change in the 6th District's boundaries.  All 15 congressional districts fit together like puzzle pieces.  Thus, it is no far stretch to see where all 15 districts would be impacted by a change in just one.  Further, even if the ill-defined scope of the injunction alone did not present insurmountable problems, the Plaintiffs still offer no timely resolution to the immediate problems that their injunction would cause.  Ultimately, if the Plaintiffs' requested injunction lived just a short life, it could easily cause all congressional candidates from appearing on the general election ballot, thus depriving *all* Ohioans of their right to vote and leaving Ohio with *no* representation in Congress.  The Plaintiffs' requested injunction would cause significant, wide-scale irreparable harm to others and it clearly is not in the public interest.

### b.    Laches also bars injunctive relief.

"Laches, a reflection of the maxim equity aids the vigilant" precludes the Plaintiffs' motion for injunctive relief because, they have pursued their claim in a dilatory fashion.  *See Libertarian Party v. Davis*, 601 F.Supp. 522, 525 (E.D.Ken. 1985).  A failure to act diligently is fatal in the

election context because "it is well established that in election-related matters, extreme diligence and promptness are required." *King Lincoln Bronzeville Neighborhood Ass'n v. Husted*, No. 2:06-cv-00745, 2012 WL 395030, *7 (S.D.Ohio Feb. 7, 2012) (Marbley, J.) (citation omitted).  A less than vigorous application of the laches defense encourages delay "until the last minute", which would, in turn, force election administrators "to halt their scheduled election processes to wait for a ruling." *Perry v. Judd*, 471 Fed. App'x. 219, 225 (4th Cir. 2012).  While parties who assert a laches defense must show prejudice, in election-related litigation, the parties challenging the election must show that they acted diligently.  *See McClafferty v. Portage County Board of Elections*, 661 F.Supp.2d 826, 839 (N.D. Ohio 2009); *see also State ex rel. Demaline v. Cuyahoga County Board of Elections*, 90 Ohio St.3d 523, 245, 2000-Ohio-108, 740 N.E.2d 242 (Ohio 2000) ("In extraordinary writ cases involving election matters, in order to avoid laches, relators bear the burden of establishing that they acted with the requisite diligence.") (citation omitted).

The Plaintiffs failed to act diligently in litigating their claims regarding congressional redistricting.  They sat on the sidelines for nearly six-months while Ohio's congressional redistricting was vigorously litigated in the Ohio Supreme Court.  Rather, they took their claims to federal court and essentially asked this Court to inject itself in the state court action.  When the federal case was stayed pending resolution by the Ohio Supreme Court, the Plaintiffs simply paused and still did nothing.  They could have moved to intervene in the venue where the litigation was actually occurring, but inexplicably they did not.  To issue injunctive relief now would prejudice the entire elections system and the Secretary of State's ability to administer that election. The Plaintiffs' failure to find the appropriate forum and to diligently pursue their claims in the most obvious forum during nearly six months of litigation over the Congressional Plan should bar their dilatory request for relief before this Court.

4.      **The Requested Injunction Will Not Serve the Public Interest.**

For all of the above reasons, Plaintiffs' requested relief would harm the public interest. Ohio has a compelling public interest in preserving the integrity of its election processes. *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *cf. also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 194-97 (2008). "[C]aution" granting injunctions is "especially" warranted "in cases affecting a public interest where the court is asked to interfere with or suspend the operation of important public works or to control the action of another department or government." *Country Club v. Jefferson Metropolitan*, 5 Ohio App.3d 77, 80, 449 N.E.2d 460, 464 (7th Dist. 1981) (quotation omitted). Such significant impact cuts against the interest of Ohio, and the public, in orderly elections. *See Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018). The Plaintiffs fail to establish any of the four requirements for injunctive relief and their motion should be denied.

D.      **The Appointment of a Special Master is not Warranted.**

Even if this Court found some merit to the Plaintiffs' claims, the appointment of a Special Master is not warranted. Appointing a Special Master is the exception, not the rule. *Webster Eisenlohr, Inc. v. Kalodner*, 145 F.2d 316, 319 (3d Cir.1944), cert denied, 325 U.S. 867 (1945). Federal Rule of Civil Procedure 53(a)(1) states that, unless provided by statute, only three situations exist where a court may appoint a Special Master: (1) to "perform duties consented to by the parties;" (2) to "hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted by: (i) some exceptional condition; or (ii) the need to perform an account or resolve a difficult computation of damages; or" (3) to "address pretrial and posttrial matters that cannot be effectively and timely address by an available district judge or magistrate judge of the district."

It is true courts may appoint Special Masters to help formulate a map or plan, but courts require plenty of time for the Special Master to do so.  *See, e.g., Favors v. Cuomo*, 866 F. Supp. 2d 176, 184–85 (E.D.N.Y. 2012) (finding a case ripe months before an election, in part to give special master time to make a map).  Such a complex process takes substantial time.  *See Dillard v. City of Greensboro*, 956 F. Supp. 1576, 1577–82 (M.D. Ala. May 22, 1997) (taking 112 days from the initial appointment of the special master to the district court adopting the special master's plan).

Appointing a Special Master to draw a map this late into the process would only create further issues.  And, as discussed above, there is simply not enough time.  This Court would need to (1) appoint a Special Master, (2) give the Special Master time to make numerous and intricate considerations, such as research or consultation with experts, in order to appropriately attempt to draw the contested District, and (3) this Court, and the parties would need time to review the newly drawn map.  *See Diaz v. Silver*, 932 F.Supp. 462, 467 (E.D.N.Y.1996) (noting the need for time for the court and parties to review the maps).  The time constraints here would not allow for this process to succeed without creating further issues and voter confusion.

The Plaintiffs cite *Reynolds v. Sims* to support their position, but that case is not only factually dissimilar, the Supreme Court's reasoning in that case supports Defendants' position. 377 U.S. 533 (1964).  There, the district court only stepped in once the Alabama state legislature had failed to act effectively in remedying constitutional deficiencies in their state's legislative apportionment plan by not creating a subsequent plan.  *Id.* at 586.  The Supreme Court held "under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the

existing apportionment scheme was found invalid." *Id.* at 585. In considering relief, a court can "reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree." *Id.*

Thus, even if this Court were to find some sort of substance to the Plaintiffs' claims, the remedial relief of appointing a Special Master would be inappropriate. The General Assembly enacted the March 2 Plan in reaction to the Ohio Supreme Court invalidating the November 16, 2021, Congressional Plan. This action alone is opposite to *Reynolds*, as the General Assembly acted to remedy the first map by passing a second. Further, upon the passing of the March 2 Plan, the Secretary of State instructed county boards of election to implement that plan in time for the May 3 primary election. Finally, the primary election already occurred.

## IV.  CONCLUSION

For the foregoing reasons, the Plaintiffs fail to state a claim upon which relief can be granted. For the same reasons, the Plaintiffs are not entitled to partial summary judgment. Therefore, the Complaint should be dismissed, and the Plaintiffs' omnibus motion should be denied.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
*Counsel of Record*
ALLISON D. DANIEL (0096186)
GARRETT M. ANDERSON (0100121)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215

Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Allison.Daniel@OhioAGO.gov
Garrett.Anderson@OhioAGO.gov

*Counsel for Defendants Governor Mike DeWine,
Secretary of State Frank Larose, Auditor of State
Keith Faber, House Speaker Robert Cupp, and
Senate President Matt Huffman*

### CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2022, the foregoing was filed with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance.  Parties may access this filing through the Court's system.

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General